IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Gabriel Randolph, | ) | C/A No.: 1:13-74-JMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Lt. Haroff, Sgt. Allewine, Ofc. Haymond, Ofc. Binkley, and Ofc. Tucker, each in their individual and official capacities, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

Plaintiff Gabriel Randolph, proceeding pro se and in forma pauperis, is incarcerated at Perry Correctional Institution ("PCI") in the custody of the South Carolina Department of Corrections ("SCDC"). He filed his complaint pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights by the following PCI officers: Lt. Harouff,[1] Sgt. Alewine,[2] Ofc. Haymond, Ofc. Binkley, and Ofc. Tucker ("Defendants").

This matter comes before the court on the motion for summary judgment filed by Harouff, Haymond, Binkley, and Tucker ("Moving Defendants"). [ECF No. 69]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Moving Defendants' motion. [ECF No. 70]. The motion having

---

[1] Defendants indicate that Harouff is the correct spelling of Lt. Harouff's name. [ECF No. 69-1 at 1].

[2] Defendants indicate that Alewine is the correct spelling of Sgt. Alewine's name. *Id.* Plaintiff has failed to serve Alewine and the undersigned recommended in a report and recommendation drafted June 10, 2013, that he be dismissed pursuant to Fed. R. Civ. P. 4(m). [ECF No. 42]. That report and recommendation remains pending.

been fully briefed [ECF No. 72], it is ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Because this motion is dispositive, the undersigned submits this report and recommendation for the district judge's consideration. For the following reasons, the undersigned recommends Moving Defendants' motion [ECF No. 69] be granted in part and denied in part.

I.     Factual and Procedural Background

Plaintiff alleges that Defendants violated his Eighth Amendment rights on June 20, 2011. [ECF No. 13-2 at 3]. Plaintiff alleges that he was trying to avoid Haymond because he and Haymond had an altercation on June 13, 2011. [ECF No. 13-2 at 4]. Plaintiff claims that on June 20, 2011, he was sitting on his bunk when Haymond, Binkley, and Alewine approached his cell and ordered him to the door to allow Haymond to put him in restraints. *Id.* at 4. Plaintiff contends that he asked to see and speak to Captain Abston. *Id.* at 4–5. Plaintiff alleges that Alewine stated that if Plaintiff did not come to the door, "we'll do it Perry Way!, and you ain't going to like if we do it the Perry Way!" *Id.* at 4. Plaintiff again asked to see the captain, but did not comply with Alewine's order. *Id.*

Plaintiff contends that Harouff then approached his cell with a mace canister at his side and Tucker approached his cell with a video camera.[3] *Id.* at 5. Plaintiff states that when Binkley opened his cell door, Harouff approached Plaintiff, who was sitting on his bunk, and sprayed mace in his face. *Id.* Plaintiff alleges that Binkley hit him in the head

---

[3] According to the record, the video is not available. [ECF No. 69-9 at 2].

with a walkie talkie that knocked him off the bunk to the floor. *Id*. Plaintiff states that Haymond then stepped on Plaintiff's back, and Binkley put him in leg irons and dragged him out of the cell. *Id.* Plaintiff alleges that Harouff sprayed him again with mace, and Alewine tried to put handcuffs on Plaintiff. *Id*. Haymond allegedly kicked Plaintiff in the ribs and Alewine was able to restrain Plaintiff in the handcuffs. *Id*. Plaintiff states that Alewine, Binkley, and Haymond dragged him into a hallway, and Alewine removed his clothing while Harouff took the property from his cell. *Id.*

Plaintiff claims he was dragged back into his cell and his restraints removed. *Id*. Plaintiff alleges that Harouff ordered Haymond to turn the water off in his cell. *Id.* He contends that a nurse came to his cell an hour later, said he looked "alright," and left. *Id.* at 6. Plaintiff states that the cell water was off for an hour and a half. *Id*. Plaintiff claims he was unable to wash the chemical munitions from his body until his cell water was turned on four hours later. *Id.* Plaintiff claims he was in a strip cell for three days without the cell being decontaminated. *Id*.  he alleges he was not allowed to see medical. *Id*. his cell or permitted to see medical for three days. *Id.* Plaintiff states that he had a painful knot and bruise on his head from Binkley's strike, bruises from his handcuffs, and a bruised rib. *Id.* Plaintiff seeks monetary damages. *Id.* at 8.[4]

---

[4] In contrast, Defendants allege that officers arrived at Plaintiff's cell to conduct a random shakedown. [ECF No. 69-6 at ¶ 5]. Defendants contend that officers issued several directives to Plaintiff to come to the door before Plaintiff complied. *Id.* Defendants claim that once Plaintiff came to the door, he turned towards the officers and yelled as he was being restrained. *Id.* at ¶ 7. Defendants state that Harouff gave Plaintiff directives not to turn around, but Plaintiff continued to verbally attack the officers. *Id.* Defendants allege that while Haymond placed restraints on Plaintiff, Plaintiff turned quickly and appeared to attempt to spit on Haymond. *Id.* at ¶ 8. Defendants claim that

II.     Discussion

    A.     Summary Judgment Standard

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are

---

Alewine and Harouff then administered bursts of chemical munitions to Plaintiff's facial area. *Id.* Defendants contend that Plaintiff complied with all further directives and was allowed to decontaminate his cell. Id. at ¶ 10. Defendants state that Plaintiff was then placed on controlled cell status. *Id.* For the purposes of this motion, the undersigned has resolved all disputes of fact in favor of Plaintiff as the non-moving party.

irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.  Analysis

1.  Exhaustion of Administrative Remedies

Defendants argue that Plaintiff failed to exhaust his administrative remedies concerning improper or inadequate medical care because he did not appeal the denial of his Step 2 grievances. [ECF No. 69-1 at 13–16]. Plaintiff is not required to appeal a decision on a Step 2 grievance to exhaust a medical indifference claim. *See Johnson v. Ozmint*, 567 F. Supp. 2d 806, 820 n.5 (D.S.C. 2008); *Duncan v. Langestein*, No. 07-268, 2008 WL 153975 at *5 (D.S.C. Jan. 14, 2008) (citing *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267 at *4 n.4 (D.S.C. May 15, 2006) (recognizing that completion of Step 2 grievance exhausts administrative remedies and § 1997(a) does not require inmates to further appeal to Administrative Law Court)). Therefore, Defendants' affirmative defense that Plaintiff failed to exhaust his administrative remedies is unavailing.

2.  Excessive Force/Denial of Decontamination

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim. Specifically, Plaintiff must prove that a correctional

officer applied force "maliciously and sadistically for the very purpose of causing harm," rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). The objective component of an excessive force claim is not nearly as demanding, because "'[w]hen prison officials maliciously and sadistically use force to cause harm'. . . 'contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321–22. The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. *Id.* The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." *Id.* at 322.

Federal courts closely scrutinize the use of tear gas or mace in correctional facilities. *See, e.g., Bailey v. Turner*, 736 F.2d 963 (4th Cir. 1984); *Greear v. Loving*, 538 F.2d 578 (4th Cir. 1976). Even when properly used, such weapons "possess inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the

victim." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985). Accordingly, although it is not per se unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the "totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment." *Bailey*, 736 F.2d at 969; *see also, Justice v. Dennis*, 834 F.2d 380, 383 (4th Cir. 1987) (en banc), *vacated on other grounds*, 490 U.S. 1087 (1989).

Mace and pepper spray can be constitutionally used in small quantities to control a "recalcitrant inmate." *Bailey*, 736 F.2d at 968–69. A limited application of chemical munitions may be "much more humane and effective than a flesh to flesh confrontation with an inmate," and prompt washing of the affected area of the body will usually provide immediate relief from pain. *Soto v. Dickey*, 744 F2d 1260, 1270 (7th Cir. 1984). Because a limited use of mace constitutes a relatively "mild" response compared to other forms of force, the initial application of mace indicates a "tempered" response by the prison officials. *Williams v. Benjamin*, 77 F3d 756, 763 (4th Cir. 1996).

The Supreme Court has directed courts to balance several factors in determining whether prison officials act maliciously and sadistically. These factors include (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321.

Defendants' use of force was reasonable, as Plaintiff admits that he did not comply with the officers' orders to come to the door to be restrained. The amount of force was related to the need for the force, as Defendants continued to use force only until they were able to fully and properly restrain Plaintiff. Plaintiff alleges he suffered a knot and bruise on his head and bruises on his wrists and ribs. Defendants reasonably perceived a threat to staff and other prisoners, as Plaintiff was refusing to comply with direct orders. Therefore, an analysis of the first four *Whitley* factors indicates Defendants' use of force, standing alone, was not excessive.

With regard to the final *Whitley* factor, the facts do not demonstrate that Defendants took any efforts to temper the severity of the force. Although a nurse checked Plaintiff, he alleges she did not assess him until almost an hour later. [ECF No. 13-2 at 6]. Most importantly, Plaintiff alleges he was not offered an opportunity to wash the chemical munitions off of his body. Plaintiff submitted the affidavit of inmate Anthony Joe, who stated that Harouff turned off the water in Plaintiff's cell and Plaintiff complained about his eyes and skin burning from the chemical munitions. [ECF No. 72-3 at 2]. *Id.*[5]

Viewing the facts in the record in the light most favorable to Plaintiff, the undersigned finds that Defendants are not entitled to summary judgment to the extent Plaintiff has alleged an Eighth Amendment violation for their having denied him and opportunity to decontaminate. *See Mann v. Failey*, __ Fed. App'x. __, 2014 WL 3511878

---

[5] Plaintiff's amended complaint and response both contain contradictory allegations that his water was off for one and a half hours and that it was off for four hours. [ECF Nos. 13-2 at 5–6; 72 at 3].

(4th Cir. 2014) (finding a potential Eighth Amendment violation where the plaintiff alleged he was in pain for several hours without being allowed to decontaminate) (citing *Williams v. Benjamin*, 77 F.3d 756, 765–68 (4th Cir. 1996)). However, the undersigned recommends Defendants be granted summary judgment on the use of force itself, including the use of chemical munitions.

       3.      Medical Indifference

Plaintiff asserts a claim for deliberate indifference to his serious medical needs, but his allegations are directed at PCI nursing staff, who are not defendants in this case. [ECF No. 72 at 10–12]. To the extent Plaintiff intended to assert a medical indifference claim against Defendants, he has not offered any evidence that they deprived him of an examination by the PCI medical staff, and he does not dispute their contention that they alerted the medical staff of his condition. [ECF Nos. 72 at 10–12; 69-9 at 2]. Because Plaintiff's claim is directed at persons who are not defendants in this lawsuit, the undersigned recommends Defendants be granted summary judgment on Plaintiff's medical indifference claim.

       4.      Conspiracy

Plaintiff claims Defendants conspired with each other by covering up their attack on him and by denying him medical treatment for his injuries. [ECF No. 13-2 at 7]. Defendants allege that Plaintiff was evaluated by nursing staff shortly after he was exposed to gas and again approximately one week later. [ECF Nos. 69-1 at 11–12; 69-8 at ¶¶ 6–10]. Under 42 U.S.C. § 1983 and § 1985, an alleged conspiracy must be pled and proved by concrete facts, not mere conclusory allegations. *Simmons v. Poe*, 47 F.3d 1370,

9

1376–77 (4th Cir. 1995); *Buschi v. Kirven*, 775 F.2d 1240, 1248 (4th Cir. 1985). In addition, the Supreme Court has held that, to establish a federal conspiracy claim under § 1985, a plaintiff must show that the alleged conspiracy is motivated by "some racial, or perhaps otherwise class-based invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985). Plaintiff provides no concrete facts to demonstrate that Defendants came to a mutual understanding or acted jointly in concert to deprive Plaintiff of any constitutional right. Plaintiff also fails to allege that Defendants acted with a discriminatory motive. The undersigned recommends Defendants be granted summary judgment on Plaintiff's conspiracy allegations.

     5.     Qualified Immunity

Defendants assert that they are entitled to qualified immunity. [ECF No. 69-1 at 4–6]. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by this immunity. The *Harlow* court held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232

(2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

The undersigned recommends that qualified immunity be denied on Plaintiff's Eighth Amendment claim for failure to allow him to decontaminate. *See Mann,* 2014 WL 3511878 *5 (noting that the Fourth Circuit has previously held that denial of decontamination can give rise to an Eighth Amendment violation). As to Plaintiff's remaining constitutional claims, the record before the court shows that Defendants did not transgress any statutory or constitutional rights of Plaintiff of which they were aware in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendants be granted qualified immunity on Plaintiff's remaining constitutional claims.

      6.     State Law Claims

Although Plaintiff's amended complaint asserts state law tort claims, Plaintiff's response indicates that he does not intend to assert any tort claims. [ECF No. 72 at 14]. The undersigned recommends Defendants be granted summary judgment on Plaintiff's state law claims for assault and battery and negligence.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Moving Defendants' motion for summary judgment [ECF No. 69] be denied as to Plaintiff's denial of decontamination claim and granted on Plaintiff's remaining claims.

    IT IS SO RECOMMENDED.

*[Signature: Shiva V. Hodges]*

October 15, 2014                               Shiva V. Hodges
Columbia, South Carolina             United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).